**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **WILLIAM M. FLATAU, as trustee in bankruptcy for Calvin Ferrell Davis, CALVIN FERRELL DAVIS, and LASHAN DENISE DAVIS,** )<br>)<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**SHERMAN FINANICAL GROUP, LLC,** *et al.*, )<br>)<br>)<br>**Defendants.** )<br>)<br>)<br>——————————————————— ) | **CIVIL ACTION NO. 5:14-CV-245(MTT)** |

## <u>ORDER</u>

Defendants LVNV Funding LLC, Resurgent Capital Services LP, Sherman Acquisition LLC, Sherman Financial Group LLC, Sherman Originator LLC (the "Sherman Defendants"), and Atlas Acquisitions LLC ("Atlas") have moved to dismiss the Plaintiffs' second amended and recast complaint (Doc. 74) for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine and failure to state a claim as to all counts. (Docs. 20; 21).[1]

Arrow Financial Services LLC ("Arrow"), which was recently added as a Defendant, has not yet moved to dismiss. However, because the primary point of the motions is that the Court lacks subject matter jurisdiction, the Court will consider the Court's subject matter jurisdiction over the Plaintiffs' claims against Arrow *sua sponte*. *See Univ. of S. Ala. V. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[A] court

---

[1] As noted by the Court in its order granting the Plaintiffs' motion to amend, the second amended complaint did not moot the Defendants' motions to dismiss. (Doc. 73 at 3). The Plaintiffs acknowledged that the Court could grant the Plaintiffs leave to amend and then "rule on the merits of the pending motions to dismiss." (Doc. 71 at 4).

should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.  Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

## I.      BACKGROUND[2]

### A.  Statement of the Facts

The Plaintiffs allege that the "Defendants collectively participate in the operation and management of a sophisticated consumer debt collection enterprise." (Doc. 74, ¶ 15).  Defendant Sherman Financial operates its part of this enterprise through various "interdependent subsidiaries engaged in purchasing and servicing portfolios of consumer defaulted debt."  (*Id.* ¶ 17).  Defendants LVNV Funding LLC ("LVNV") and Sherman Acquisition are "two of Sherman Financial's asset holding entities [who] do nothing more than own portfolios of consumer debt."  (*Id.* ¶ 21).  "Resurgent, one of Sherman Financial's operating entities," collects consumer debt owned by LVNV by entering into agreements with law firms that file debt collection lawsuits in state courts. (*Id.* ¶ 22).  Like Sherman Financial, Arrow also "acquired defaulted consumer debts at a large discount and then sought to collect on those debts by bringing actions in state courts," and then in June 2012, Arrow sold most of its "consumer debt portfolio" to LVNV.  (*Id.* ¶ 26).  "Atlas purchases consumer bankruptcy debt at a large discount from entities such as LVNV and Sherman Acquisitions" and collects the purchased debts by filing proofs of claim in bankruptcy.  (*Id.* ¶ 27).

The Plaintiffs allege Calvin Ferrell Davis was a victim of the Defendants' "scheme" which began when Arrow filed a complaint in the State Court of Houston

---

[2] The facts are taken from the allegations in the second amended and recast complaint (Doc. 74) and accepted as true for purposes of the motion.

County to recover a "defaulted credit card debt from 'Calvin Davis'… allegedly owed to Wells Fargo Financial Inc. ('Wells Fargo') amounting to $17,369.63 (the 'Debt')." (*Id.* ¶¶ 28-29). However, the Plaintiffs allege Davis has only had an automobile loan with Wells Fargo, which he paid off on March 7, 2006. (*Id.* ¶ 30). The complaint listed Davis's address as 6089 Lakeview Road Apt. 904, Warner Robins, Georgia 31088 ("the Lakeview Apartment"). (*Id.* ¶ 33). Davis's girlfriend lived at this address in 2005 and 2006, and Davis received mail there during that time. (*Id.* ¶ 34). He also listed this address on his 2005 W-2 and his automobile loan with Wells Fargo. (*Id.*). However, the Plaintiffs deny Davis ever lived there or had any connection with the address at the time of the Houston County action in 2010. (*Id.*).

Arrow hired process server Bradley Hill to serve Davis, and Hill swore under penalty of perjury that he personally served Davis at the Lakeview Apartment on September 22, 2010. (*Id.* ¶ 35). However, Hill was not an authorized process server in Georgia. (*Id.* ¶ 36). Also, a man named Hung Van Thai lived at the Lakeview Apartment on the date Hill swore he served Davis, while Davis lived in Powder Springs, Georgia, 120 miles away.[3] (*Id.* ¶¶ 37-38). Counsel for Arrow swore in state court that Davis was served at the Lakeview Apartment and that Davis was in default for failing to file a responsive pleading to the complaint. (*Id.* ¶ 40). The State Court of Houston County entered a default judgment against Davis in the amount of $18,160.25 on March 15, 2011. (*Id.* ¶ 42). Counsel for Arrow filed a "Notice of Assignment of Judgment" to

---

[3] Also pending before the Court is the Plaintiffs' motion for leave to file a second supplement sur-reply to the motions to dismiss. (Doc. 53). This sur-reply is simply to supplement the record with the affidavit of Mr. Hung Van Thai, a picture of Davis, a picture of Hung Van Thai, and Hill's affidavit of service. (Doc. 53-1). For purposes of this motion, the Plaintiffs' motion is **GRANTED**. (Doc. 53).

LVNV in the State Court of Houston County and sent a copy to the Lakeview Apartment, but Davis did not receive it because he did not reside there.  (*Id.* ¶¶ 44-45).

After Arrow assigned the debt to LVNV, LVNV mailed Davis a letter on May 31, 2013 to notify him that it intended to initiate garnishment proceedings.  (*Id.* ¶¶ 47-48).  Specifically, the letter stated that "a garnishment has been, or will be filed," that "it will be served upon [Davis's employer]," and that it would be filed in the name of "LVNV Funding LLC FNA Arrow Financial Services LLC."  (*Id.* ¶ 48).  This letter was mailed to his mother-in-law's residence where Davis has never resided.  (*Id.* ¶ 49).  The Plaintiffs allege LVNV knew that Davis did not reside at his mother-in-law's residence and did not owe the debt.  (*Id.* ¶ 50).  Nevertheless, LVNV initiated garnishment proceedings on June 7, 2013 in the State Court of Fayette County, Georgia, and thereafter Davis's employer was served with a summons of continuing garnishment which stated that Davis owed $21,201.42 plus costs to LVNV.  (*Id.* ¶ 53).  Davis's employer notified him about the garnishment on June 17, 2013.  (*Id.* ¶ 56).  The Plaintiffs allege Davis was completely unaware of the preceding events until he spoke with his employer.  (*Id.* ¶ 46).

On June 20, 2013, Davis called LVNV's counsel to dispute the validity of the garnishment proceedings in Fayette County, to inform LVNV that he never had a Wells Fargo account and never lived at the Lakeview Apartments, and to request them to investigate the purported Wells Fargo account.  (*Id.* ¶ 61).  LVNV maintained that Davis owed the debt and that the default judgment arising out of the Houston County action was valid and refused to investigate or release the garnishment.  (*Id.* ¶¶ 62-63).  Thereafter, Davis's attorney called LVNV's counsel who maintained Davis owed the

debt. (*Id.* ¶ 65). Instead of moving to set aside the default judgment, Davis filed for bankruptcy to immediately stop the garnishment. (*Id.* ¶¶ 66, 68, 70-71).

LVNV then "assigned or transferred" the default judgment to Sherman Acquisition who then "assigned or sold" the judgment to Atlas. (*Id.* ¶¶ 72-73). The Plaintiffs allege that "both entities [knew] … Davis never owed the Debt, that neither entity had documentation to support attempting to collect the supposed Debt, and that the Default Judgment had been fraudulently obtained." (*Id.* ¶ 73). Atlas filed a proof of claim in bankruptcy on August 30, 2013 "as the purported assignee of Wells Fargo" to collect the debt from Davis, stated the "basis of its proof of claim was a 'Credit Card,'" and claimed Davis owed $23,343.06. (*Id.* ¶¶ 75-76). The Plaintiffs allege Atlas knew its claim "lacked substantial justification" and included false information in the proof of claim. (*Id.* ¶ 76).

### B. Procedural Background

Following the bankruptcy proceedings, the Plaintiffs filed this lawsuit. The Sherman Defendants and Atlas moved to dismiss the Plaintiffs' complaint primarily on the ground the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Docs. 20-21). The Defendants argued that the Plaintiffs' allegations were effectively a challenge of the default judgment in Houston County. (*Id.*). In response, the Plaintiffs adamantly argued that *Rooker-Feldman* was inapplicable because the Defendants actually sued a *different* Calvin Davis in state court. (Docs. 32 at 2; 34 at 1).

However, this argument became problematic when documents surfaced suggesting a connection between the "real" Calvin Davis and the address for the Calvin

Davis sued in state court.  (Doc. 46-1).  The Plaintiffs then reframed their argument to challenge service of process in state court.  (Doc. 56).  The Court stayed the case to allow the Plaintiffs to challenge the default judgment, but the State Court of Houston County concluded it lacked jurisdiction to hear the Plaintiffs' motion because of Davis's bankruptcy discharge.  (Docs. 63; 66-1).  Given the evidence that came to light during the parties' briefing and during the attempt to set aside the default judgment, the Plaintiffs asked the Court for permission to amend their complaint, dismiss Greene & Cooper as a Defendant, and add Arrow as a Defendant.  (Doc. 66).  The Court granted these requests.  (Doc. 73).

## II.   DISCUSSION

### A.  Motion to Dismiss Standard Pursuant to Fed. R. Civ. P. 12(b)(1)

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id.* at 1232–33 (internal quotations and citation omitted).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Id.* at 1233.  The Defendants here have introduced material extrinsic from the pleadings and thus have made a factual attack on the Court's jurisdiction.  The parties have been given ample opportunity to brief the issue and submit evidence to the Court.

**B. Motion to Dismiss Standard Pursuant to Fed. R. Civ. P. 12(b)(6)**

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**C. *Rooker-Feldman* Doctrine**

The Plaintiffs have asserted claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"), Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") statute, and Georgia's Fair Business Practices Act ("GFBPA"), as well as claims for

intentional infliction of emotional distress, loss of consortium, negligence per se, attorney's fees, and punitive damages.  Each Defendant argues the Court lacks subject matter jurisdiction over these claims pursuant to the *Rooker-Feldman* doctrine.

*Rooker-Feldman* is a narrow doctrine confined to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and *inviting district court review and rejection of those judgments*."  *Vasquez v. YII Shipping Co., Ltd.*, 692 F.3d 1192, 1195-96 (11th Cir. 2012) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006).  The doctrine operates as a bar to federal court jurisdiction where claims are "inextricably intertwined" with the state-court judgment.  *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012) (citation omitted).  In other words, the doctrine prevents state-court losers "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994).  However, the doctrine is "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding."  *Lance*, 546 U.S. at 464.

**D.  Analysis**

For the *Rooker-Feldman* doctrine to apply, the state-court proceedings must have ended before the federal case was filed.  *Nicholson v. Shafe*, 558 F.3d 1266, 1274-75 (11th Cir. 2009).  It is clear the state-court proceedings had ended before this case was filed, and the Plaintiffs do not challenge this point.  In their many briefs, the

Plaintiffs have raised and raised again a number of arguments against the applicability of the *Rooker-Feldman* doctrine.  However, in their final pleading on the issue, the Plaintiffs have distilled their arguments to three: (1) Davis was not a party to the state-court action because he was not properly served; (2) their claims are independent of the state-court judgment as they "flow at least in part from" the Defendants' later conduct; and (3) preclusion law, rather than *Rooker-Feldman*, applies and does not bar the Plaintiffs from bringing their state or federal claims to this Court.  (Doc. 66 at 9-10).  The Court addresses these arguments in turn.

### 1.   Whether Davis Was a Party to the State-Court Action

Davis contends that he was not a "state-court loser" because he was never properly served in the state-court action. *Id.* at 9.  However, a claim of faulty service does not allow a party to avoid the *Rooker-Feldman* doctrine. *See, e.g.*, *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007); *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005); *Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003).  "[S]tate courts [are] competent to determine their own jurisdictional boundaries," and Davis could have raised the faulty service issue to the state court. *Schmitt*, 324 F.3d at 487.

Citing O.C.G.A. § 9-11-60(a), the Plaintiffs also argue that *Rooker-Feldman* does not prevent the Court "from collaterally reviewing the state default judgment for lack of personal jurisdiction" due to faulty service because pursuant to Georgia law, "[a] judgment void on its face may be attacked in any court by any person."  (Doc. 66 at 4 (alteration in original) (quoting O.C.G.A. § 9-11-60(a)).  However, the Eleventh Circuit has stated that "[O.C.G.A. § 9-11-60] establishes a method for attacking Georgia state

court judgments, but only *in* Georgia state courts." [4]  *Rice v. Grubbs*, 158 F. App'x 163,

166 (11th Cir. 2005); *see also Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1558 (11th Cir.

1993).  Accordingly, the "any court" language in the statute does not include this Court.[5]

In short, that Davis may not have been properly served does not prevent the

application of the *Rooker-Feldman* doctrine.

### 2. Whether the Plaintiffs' Claims are Independent of the State-Court Judgment

The Plaintiffs also argue that *Rooker-Feldman* does not apply because their

claims are independent of the state-court judgment.  (Doc. 66 at 9).  The necessary

implication is that their claims are not inextricably intertwined with that judgment.  *See*

*Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333-34 (11th Cir. 2001).  As

stated, "the *Rooker-Feldman* doctrine operates as a bar to federal court jurisdiction

where the issue before the federal court was 'inextricably intertwined' with the state

court judgment."  *Alvarez*, 679 F.3d at 1262.  "A claim is inextricably intertwined if it

---

[4] The Plaintiffs also cite O.C.G.A. § 9-12-16 to argue that this Court is not prohibited from collaterally reviewing the state-court judgment that is void.  Like O.C.G.A. § 9-11-60(a), this statute provides that any court can hold a judgment void when the court issuing the judgment had no jurisdiction over the person or subject matter.  O.C.G.A. § 9-12-16.  However, for the same reason the Eleventh Circuit held O.C.G.A. § 9-11-60(a) is not a method for federal courts to attack state court judgments, neither is O.C.G.A. § 9-12-16 such a method.

[5] The Plaintiffs cite to the Third Circuit's decision in *In re James*, 940 F.2d 46 (3d Cir. 1991), to support their argument the Court is permitted to collaterally attack the state-court judgment.  (Doc. 66 at 5).  There, the Third Circuit reasoned that while a federal bankruptcy court may not overturn or vacate a state-court judgment because the bankruptcy court disagrees with the merits of a state court's decision, "a federal bankruptcy court may intervene … when the state proceedings" result in a void judgment.  *In re James*, 940 F.2d at 52.  The court reasoned that "[b]ecause a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests."  *Id.*  Thus, the court recognized the *void ab initio* exception to the *Rooker-Feldman* doctrine which allows federal courts to review state-court judgments that are a legal nullity.  *See, e.g., In re Pavelich*, 229 B.R. 777, 783 (9th Cir. 1999).  However, as the Plaintiffs recognize, the Eleventh Circuit has declined to adopt this exception.  (Doc. 56 at 5 n.2).  *See Ware v. Polk Cty. Bd. of Cty. Comm'rs*, 394 F. App'x 606, 608 (11th Cir. 2010).  Further, to the Court's knowledge, the exception has only been applied in bankruptcy cases, such as when a state court acts in violation of the bankruptcy discharge.  *See, e.g., In re Pavelich*, 229 B.R. 777 at 782.  This narrow application is "to protect the dominant federal role in that specialized area of the law" that is bankruptcy.  *Schmitt*, 324 F.3d at 487.  Given this precedent, the Court declines to invoke the *void ab initio* exception here.

would effectively nullify the state court judgment, or [if] it [would] succeed[ ] only to the extent that the state court wrongly decided the issues." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (internal quotation marks and citations omitted). Here, the Plaintiffs' claims against Arrow and the Sherman Defendants primarily regard the proceedings in the State Court of Houston County and the State Court of Fayette County. The Plaintiffs' claims against Atlas regard its filing a proof of claim in bankruptcy court.

### a. The claims against Arrow and the Sherman Defendants

The gravamen of the Plaintiffs' allegations against Arrow and the Sherman Defendants, specifically LVNV, is a challenge to the debt and to the validity and propriety of the proceedings and default judgment in the State Court of Houston County and the corresponding garnishment proceedings in the State Court of Fayette County. The alleged FDCPA violations are based on Arrow's filing the Houston County action and service of process, LVNV's pursuing the garnishment action, and LVNV's communication with Davis and his attorney[6] that Davis owed the debt and that LVNV had a valid judgment against him.[7] (Doc. 74, ¶¶ 96-100). The Georgia RICO claims are

---

[6] Even if the *Rooker-Feldman* doctrine did not bar this claim, the Plaintiffs still have failed to state a claim based on LVNV's counsel's communication with Davis's attorney given the purpose of the FDCPA is to protect consumers. *See Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) ("A review of the FDCPA's purpose, as explained both in the statute and in the legislative history … leads us to believe that alleged misrepresentations to *attorneys* for putative debtors cannot constitute violations of the FDCPA."); *see also Richmond v. Higgins*, 435 F.3d 825, 828 n.4 (8th Cir. 2006) (collecting cases that conclude the same).

[7] The Plaintiffs also allege LVNV violated various provisions of the FDCPA by refusing to investigate the debt or provide documentation of it. (Doc. 74, ¶¶ 96, 100). Specifically, the Plaintiffs allege LVNV's refusal to investigate and provide documentation constitutes harassing, oppressive, and abusive conduct as well as an unfair or unconscionable means to collect the debt. (*Id.*). The FDCPA includes a provision that requires a debt collector to verify a debt should the debtor dispute the debt within 30 days of the debt collector's initial communication. *See* 15 U.S.C. § 1692g(b). However, the Plaintiffs have not alleged that the debt-verification requirements in this provision have been triggered, that LVNV did not comply with the notice and validation requirements of § 1692g, or even that LVNV violated § 1692g. Without allegations

based on Arrow's and LVNV's allegedly making false statements in the state-court proceedings; Arrow's mailing the complaint, motion for default judgment, and notice of assignment of judgment filed in Houston County; and LVNV's telling Davis on the phone that he owed the debt and that it had a valid default judgment against him. (*Id.* ¶ 86). The GFBPA claim is premised on the alleged FDCPA and Georgia RICO violations. (*Id.* ¶ 104). The intentional infliction of emotional distress claim is based on the Defendants' "attempt[ ] to collect the fraudulent Debt and the Default Judgment from Calvin Ferrell Davis." (*Id.* ¶ 111). The remaining claims are simply derivative of the FDCPA, Georgia RICO, and GFBPA claims. In other words, each of these claims, regardless of the legal theory upon which it is premised, is connected with the state-court judgment and corresponding garnishment.

If the Court were to accept that Arrow and the Sherman Defendants violated the above statutes and legal doctrines through their attempt to a collect a debt that Davis allegedly does not owe and was not properly collected in the state-court proceedings, the Court "would effectively declare the state court judgment was fraudulently procured and thus void." *Kropelnicki*, 290 F.3d at 129. For the FDCPA claims (and thus the GFBPA claim and derivative state law claims) to prevail, the Court would have to conclude that the debt was not properly owed and not properly collected in state court. For the Georgia RICO claims to prevail, the Court would have to conclude that Arrow and the Sherman Defendants committed various predicate acts of racketeering activity during the litigation of the state court action that resulted in a default judgment and

---

that LVNV's debt-verification obligations had been triggered, it cannot be said LVNV's alleged refusal to investigate or otherwise verify the debt constitutes harassing, oppressive, abusive, unfair, or unconscionable collection activity. Therefore, even if this part of the Plaintiffs' FDCPA claim were independent of the state-court judgment, the Plaintiffs have failed to sufficiently allege a FDCPA claim premised on this conduct.

during the corresponding garnishment action and enforcement. Thus, the Court would, in effect, conclude that the default judgment and corresponding garnishment were wrongfully obtained and thus void. *See Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1324 (S.D. Fla. 2011), *aff'd*, 477 F. App'x 558 (11th Cir. 2012). Indeed, if the State Court of Houston County had not entered a default judgment against Davis, the claims premised on the default judgment and corresponding garnishment would cease to exist.

In sum, it is clear the FDCPA, Georgia RICO, and GFBPA claims and the derivative claims premised on the allegedly fraudulent service; false filings, mailings, and communications; and other acts of litigation in state court to collect the debt are a *de facto* appeal challenging the validity of the default judgment and corresponding garnishment and thus are inextricably intertwined with the state-court judgment.[8]

### b. The claims against Atlas

The Plaintiffs allege Atlas violated Georgia RICO and the FDCPA by knowingly and fraudulently filing a false proof of claim in bankruptcy to collect the debt. (Doc. 74, ¶¶ 86, 73-77, 96-97, 99-100). If the Court were to conclude that Atlas's proof of claim

---

[8] In their motion to stay and motion to terminate the stay and amend the complaint, the Plaintiffs also argue their claims are not inextricably intertwined with the state-court judgment because Davis had no reasonable opportunity to raise his claims in state court. (Doc. 56 at 5-6; 66 at 10 n.6). True, claims are not inextricably intertwined "where a party did not have a reasonable opportunity to raise his federal claim in state proceedings." *Casale*, 558 F.3d at 1260 (internal quotation marks and citation omitted). But here, this argument is just a rehash of the Plaintiffs' argument that Davis was not properly served. Moreover, Davis had a reasonable opportunity to raise the issues regarding the propriety of the Defendants' collection efforts and the validity of the default judgment and corresponding garnishment in state court. The Plaintiffs acknowledge that Georgia law allows a defendant to set aside a default judgment at any time if the motion is based on the court's lack of jurisdiction. *See* O.C.G.A. §§ 9-11-60(d) and (f). And "[w]hen garnishment proceedings are based upon a judgment" that is being challenged, the garnishment may be ordered to be "released and stayed until the validity of the judgment" is resolved. *See* O.C.G.A. § 18-4-65. During these proceedings, the state defendant may challenge the conduct of the state plaintiffs. *See Figueroa*, 477 F. App'x at 561 (holding the plaintiff had a reasonable opportunity to raise his RICO claims in state court as evidenced by his arguments in his motions to vacate the judgment). But here, Davis filed for bankruptcy instead of raising his claims in state court.

was false and fraudulently filed because Atlas knew the state judgment was wrongfully obtained and that Davis did not owe the underlying debt, the Court would still, in effect, conclude the state-court judgment that Davis did owe the debt was erroneous, wrongfully obtained, and void.  *See In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005) (holding that the plaintiff's attack in bankruptcy on the state-court judgment for lack of personal jurisdiction due to defective service of process was "inextricably intertwined with the state-court judgment and thus barred by *Rooker-Feldman*").  Again, this claim challenges the validity of the state-court judgment and thus is inextricably intertwined with that judgment.  The Plaintiffs' "attempt to cloak [their]" claim as an FDCPA challenge and a predicate act under Georgia RICO does not alter the result.  *Id.* at 585 (Rosen, J., concurring).  "Courts must look beyond the form to address the substance of the claim."  *Id.*  And here, the substance of the FDCPA and Georgia RICO claims—the collection of an allegedly invalid state-court judgment—is inextricably intertwined with that judgment, and the Plaintiffs had a reasonable opportunity to challenge the validity of this judgment and the propriety of creditors' collection of it in state court.[9]

The Court is aware of the Eleventh Circuit's recent opinion in *Molina v. Aurora Loan Servs., LLC*, __F. App'x__, 2015 WL 7753215 (11th Cir.).  There, the plaintiff's "principal claim [was] that the defendants discriminated against her during the loan modification process" that occurred after the defendants obtained a foreclosure judgment against her in state court.  *Id.* at *3.  The Eleventh Circuit held that this claim was not barred by the *Rooker-Feldman* doctrine because the plaintiff had no reasonable

---

[9] Also, it may very well be that the Plaintiffs' FDCPA claim is precluded by the Bankruptcy Code.  *See Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002); *Neal v. Atlas Acquisitions, LLC*, 2015 WL 5687785, at *7 (M.D. Fla.); *Townsend v. Quantum3 Group, LLC*, 535 B.R. 415, 427-28 (M.D. Fla. 2015); *Johnson v. Midland Funding, LLC*, 528 B.R. 462, 470-71 (S.D. Ala. 2015).  *Cf. Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1262 n.7 (11th Cir. 2014) (declining to address the issue because the defendants did not raise it).

opportunity to raise it during the foreclosure proceedings.  *Id.*  The discriminatory conduct that formed the substance of the claim occurred two years after the state-court proceedings, *and* the substance of the claim was different from the substance of the state-court claims.  *See id.*  But here, the Plaintiffs' argument is just a rehash of their argument that Davis was not properly served and that he did not owe the underlying debt.  The Court recognizes that the conduct at issue—the filing of an allegedly false proof of claim—occurred subsequent to the state-court judgment.  But the substance of the claim is still that the state-court judgment was erroneous.

In sum, the Plaintiffs' claims challenge the validity of the default judgment and the corresponding garnishment and otherwise complain of injuries caused by the state court.  Thus, the Court could not decide in the Plaintiffs' favor without effectively deciding that the state court made an erroneous judgment.  *See Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th Cir. 2013) (reasoning the same).  This is precisely what the *Rooker-Feldman* doctrine seeks to prevent.  Even if certain claims were independent of the state-court judgment, those claims would still be dismissed for the reasons discussed.

### 3.  Whether Preclusion Law Applies

In their final motion before the Court, the Plaintiffs rather confusingly add that because their injuries "flow at least in part from" the Defendants' later conduct, preclusion law, rather than *Rooker-Feldman*, applies, and preclusion law does not bar their claims because O.C.G.A. § 9-11-60(a) permits the Court to collaterally attack the state-court judgment.  (Doc. 66 at 8-10).  The Plaintiffs contend that because their claims are independent of the state-court proceedings and not an attempt to set aside

the judgment, "state law determines whether the defendant prevails under principles of preclusion." (Doc. 66 at 8 (bold, italics, and citation omitted)).

However, as discussed, the Plaintiffs are seeking a *de facto* appeal challenging the validity of the default judgment and corresponding garnishment, and thus, their argument is without merit. *See Vasquez*, 692 F.3d at 1196 ("The question of whether a federal court may review factual issues determined by a state court is a question of collateral estoppel and res judicata, whereas the *Rooker-Feldman* doctrine is confined to cases that invit[e] district court review and rejection of judgments." (alteration in original) (internal quotation marks and citation omitted)). In any event, the Plaintiff's preclusion argument raises the same meritless argument regarding O.C.G.A. § 9-11-60(a).

### III.   CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are **GRANTED**. (Docs. 20; 21). If the Plaintiffs wish to raise new arguments with regard to whether the claims against Arrow are barred by the *Rooker-Feldman* doctrine, they shall file a supplemental brief within **fourteen** days of this order. Absent any new meritorious arguments, the Court will dismiss Arrow.

**SO ORDERED**, this 14th day of December, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT